UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| FOREST RIVER MANUFACTURING, LLC, et al., | ) ) ) |
| Plaintiffs, | ) ) ) |
| v. | ) Case No. 3:16-CV-449 JD ) |
| LEXMARK ENTERPRISE SOFTWARE, LLC, | ) ) ) ) |
| Defendant. | ) |

## OPINION AND ORDER

The dispute in this case arises out of a contract for software to manage accounts payable. Plaintiff Forest River is a manufacturer that receives a staggering quantity of invoices from its vendors on a daily basis. It contracted with defendant Lexmark to provide a software system to help manage its accounts payable. After the installation, though, the software repeatedly malfunctioned. Months of troubleshooting ensued, during which time Lexmark represented that its other customers were not having similar problems and that the problem must be with Forest River's system. Lexmark eventually fixed the problem, though, by installing a software patch it had developed months earlier for one of its other customers. In the meantime, Forest River incurred costs to manually perform functions the software should have been completing, and it lost prompt-payment discounts from its vendors. It thus filed this suit. In addition to claims for breach of contract (Count I) and breach of warranty (Count II), Forest River asserted claims for fraud (Count III) and constructive fraud (Count IV).

Lexmark has now moved for judgment on the pleadings as to the latter two counts, arguing that these tort claims are just repackaged contract claims. The Court agrees. Forest River has not pled independent torts that gave rise to injuries independent of the alleged breach of

contract, and it cannot use tort law to recover for a breach of contract. The Court therefore grants Lexmark's motion.

## I. FACTUAL BACKGROUND

Forest River operates a large manufacturing business in Elkhart, Indiana, and routinely receives 4,000 to 5,000 invoices a day from its suppliers. To help manage its accounts payable, it entered an agreement with Lexmark for enterprise content management software. Pursuant to the agreement, Lexmark would provide a software system that would facilitate the capturing, organizing, indexing, retrieving, and storage of documents pertaining to Forest River's accounts payable. Lexmark was solely responsible for the planning, design, installation, configuration, and testing of the software. It also agreed to provide technical support and maintenance, and warranted that it would perform those services in a professional and workmanlike manner consistent with industry standards. The agreement also contained a limitation of damages provision that precluded consequential damages and limited any recovery to the amounts payable under the agreement. The parties executed the contract in November 2014.

The implementation of the software did not go smoothly. Forest River began testing the software sometime after May 2015, but the system repeatedly crashed, leading to the loss of any data being processed at the time of the crash. These problems persisted when the system went live in August 2015, and the crashes increased as the amount of data being inputted increased. Forest River notified Lexmark of the problems at that time. Lexmark informed Forest River that no other customers had experienced this problem, and that the issue was the fault of Forest River's system. At Lexmark's advice, Forest River installed an upgrade to its system, but it did not fix the problems with the software. After the parties worked for months to solve these problems, Lexmark disclosed in February 2016 that it had created a software patch in April 2015 for another customer that was experiencing a similar problem. After the patch was installed on

Forest River's system on February 22, 2016, the software stopped crashing and began to run as expected.

By that time, however, the system had been performing deficiently for about six months. Because of the crashes and delays caused by the software, Forest River's employees had to spend many hours of labor manually processing its accounts payable and attempting to fix the software. The delays also damaged Forest River's relationships with its key vendors and caused it to lose discounts for timely payments. Forest River thus filed this suit against Lexmark. In Counts I and II, it asserted claims for breach of contract and breach of warranty. Those counts remain pending and are not at issue here. In Counts III and IV, Forest River asserted claims for fraud and constructive fraud. In those counts, Forest River alleges that Lexmark's conduct was wrongful because it failed to disclose the existence of a software patch that would have solved the problems early on, and instead falsely represented that the problem was with Forest River's system and that its other customers had not experienced similar problems. After initially answering the complaint, Lexmark moved for judgment on the pleadings as to these counts under Rule 12(c), and that motion has been fully briefed.

## II. STANDARD OF REVIEW

Rule 12(c) permits a party to move for judgment on the pleadings after the pleadings are closed. Fed. R. Civ. P. 12(c). A motion for judgment on the pleadings under Rule 12(c) is subject to the same standard of review as a motion to dismiss under Rule 12(b)(6). *Gill v. City of Milwaukee*, 850 F.3d 335, 339 (7th Cir. 2017). Therefore, the Court must take the facts alleged in the complaint as true and draw all reasonable inferences in favor of the non-moving party. *Matrix IV, Inc. v. Am. Nat'l Bank & Trust Co. of Chi.*, 649 F.3d 539, 547 (7th Cir.2011). To survive the motion, the complaint must contain enough facts to state a claim for relief that is plausible on its face. *Brooks v. Ross*, 578 F.3d 574, 580–81 (7th Cir. 2009) (citing *Ashcroft v.*

3

*Iqbal*, 556 U.S. 662 (2009) and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)); *see McCauley v. City of Chi.*, 671 F.3d 611, 615 (7th Cir.2011) (explaining that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."). The Court need not accept as true legal conclusions or threadbare recitals of the elements of a cause of action supported by mere conclusory statements. *Id.* at 616.

### III. DISCUSSION

Lexmark moves for judgment on the pleadings as to Counts III and IV, which assert claims for fraud and constructive fraud. In support of these claims, Forest River alleges that Lexmark made false statements by saying that its other customers had not experienced similar problems with its software and that the problem was with Forest River's system. It also alleges that Lexmark had a duty to timely disclose the existence of a software patch that would have fixed the problems, but that it delayed doing so for several months. Though Lexmark argues in part that Forest River failed to plausibly allege each of the elements of these claims, it principally argues that these claims must be dismissed because they are merely breach of contract claims, which Forest River repackaged as tort claims in an effort to access more damages than would be available under the contract.

The substantive law of Indiana governs this diversity case.[1] Indiana does not recognize a tort claim for breach of contract, nor does it allow parties to circumvent that rule by repackaging a breach of contract as a tort. *Greg Allen Const. Co., Inc. v. Estelle*, 798 N.E.2d 171, 173 (Ind. 2003); *Bayview Loan Servicing, LLC v. Golden Foods, Inc.*, 59 N.E.3d 1056, 1068 (Ind. Ct. App. 2016) ("[A] party may not restyle a breach-of-contract claim as a tort simply to obtain additional

---

[1] Lexmark's amended notice of removal properly alleges the citizenship of each party and confirms that the Court has diversity jurisdiction under 28 U.S.C. § 1332.

4

damages."). As the Indiana Supreme Court discussed in *Estelle*, "[b]ecause a tort may produce more generous damages and open the door to the possibility of punitive damages, there is obvious incentive to seek to frame a contract breach as a [tort] claim." *Estelle*, 798 N.E.2d at 173. However, "[t]ort law should not interfere where the source of a party's duty to another arises from a contract." *Bayview*, 59 N.E.3d at 1068. Thus, in order to plead a tort claim that arises out of a contractual relationship, a party must allege, first, that the defendant committed a separate and independent tort, and second, that the tort resulted in an injury distinct from that resulting from the breach of contract. *Estelle*, 798 N.E.2d at 173; *Sheaff Brock Inv. Advisors, LLC v. Morton*, 7 N.E.3d 278, 288 (Ind. Ct. App. 2014). In other words, the question is not only whether the plaintiff has pled each element of the tort claim in question, but also whether it has alleged an injury distinct from the breach. *Estelle*, 798 N.E.2d at 173 ("Plaintiffs here have pleaded a separate tort claim, but the issue is not whether they have adequately pleaded a negligence claim."); *JPMCC 2006-CIBC14 EADS Parkway, LLC v. DBL Axel, LLC*, 977 N.E.2d 354, 364 (Ind. Ct. App. 2012).

Here, Forest River has not pled an independent tort that gave rise to an injury distinct from the breach of contract. Its fraud claim is premised on allegations that Lexmark's software performed deficiently, and that instead of remedying that poor performance, Lexmark claimed that the problems were not its fault and that its other customers were not experiencing similar problems. Forest River's constructive fraud claim is premised on its allegation that Lexmark failed to timely disclose its creation of a software patch that could have fixed the problems much earlier. Forest River alleges that, as a result of this conduct, it had to incur additional costs processing its accounts payable due to the software's deficient performance, it lost discounts from its vendors due to the resulting delays, and it had to pursue other unsuccessful solutions to a

5

problem Lexmark should have fixed at the outset. However, those injuries all arise out of Lexmark's performance under the contract, as they resulted from the failure of Lexmark's software to operate as it should have, and from Lexmark's failure to promptly correct that problem.

Forest River's allegations that Lexmark misrepresented the reason for its performance or its ability to fix the problems do not transform this into a tort, either. As Indiana courts have stated on multiple occasions, "[b]reaches of contract will almost invariably be regarded by the complaining party as oppressive, if not outright fraudulent, but merely giving a false reason for breaching the contract does not convert the breach into fraud." *Epperly v. Johnson*, 734 N.E.2d 1066, 1073 (Ind. Ct. App. 2000). Thus, in *Tobin v. Ruman*, for example, the court dismissed a fraud claim as a repackaged breach of contract claim because "the allegations making up [the plaintiff's] fraud claim amount to a series of misrepresentations stemming from and about the contract itself," which at best showed that the defendant breached the contract and lied about it. *Tobin v. Ruman*, 819 N.E.2d 78, 86 (Ind. Ct. App. 2004). Likewise, the plaintiff in *Sheaff Brock* asserted a claim for constructive fraud because the defendant refused to provide him with honest, accurate documentation of the amount of commissions he was owed under a contract, forcing him to rely on false and deceptive documentation. 7 N.E.3d at 288. Again, however, the court found that this was merely a repackaged breach of contract claim and could not support a tort claim for constructive fraud. *Id.* The same is true here. All of the alleged misrepresentations stem from the contract and Lexmark's performance thereunder, and Forest River's allegations show at best that Lexmark failed to perform as required and misled Forest River about the reasons for the problems and its ability to correct them. The alleged misrepresentations and omissions thus do not create tort claims distinct from the breach of contract.

6

In defense of its claims, Forest River cites a number of cases with fraud claims involving contracts, which it argues show that fraud claims can coexist with contracts. *Thompson v. Best*, 478 N.E.2d 79, 84–85 (Ind. Ct. App. 1985) (finding fraud for failure to disclose defects in connection with the sale of a home); *Ind. Bank & Trust Co. v. Perry*, 467 N.E.2d 428, 430, 432 (Ind. Ct. App. 1984) (same); *see also Am. United Life Ins. Co. v. Douglas*, 808 N.E.2d 690, 702 (Ind. Ct. App. 2004) (finding fraud for misrepresentations and omissions in the sale of an annuity). However, the fraud in each of those cases occurred in relation to the parties' entry into the contracts, not their performance under the contracts. Fraud in the inducement is distinct from, and produces injuries independent of, a breach of contract, as a party could be harmed by having entered a contract even if the other party performs as promised. Forest River's own claims, though, rely entirely on conduct during the performance of the contract. It alleges that Lexmark made false statements "after Lexmark's Software was installed on Forest River's computer system for testing and implementation between May and August 2015," and that it failed to disclose its creation of a software patch "in April 2015," [DE 25 p. 11, 18]. The parties entered the contract in November 2014, though, so these statements could not have induced Forest River to enter the contract, and cannot support tort claims on that basis. Accordingly, the Court finds that Forest River has failed to plead an injury distinct from its breach of contract claim, so Lexmark's motion for judgment on the pleadings must be granted.

Finally, Forest River's constructive fraud claim fails for an additional, related reason, in that it has failed to plead that Lexmark had a duty to disclose the existence of its software patch. Constructive fraud requires a plaintiff to plead, among other elements, a duty owed by one party to the other due to their relationship (often involving a fiduciary or confidential relationship). *Pain Center of SE Ind., LLC v. Origin Healthcare Solutions LLC*, No. 1:13-cv-133, 2014 WL

6750042 (S.D. Ind. Dec. 1, 2014); *Sheaff Brock*, 7 N.E.3d at 288; *Douglas*, 808 N.E.2d at 702. Indiana courts have repeatedly held that "parties may not rely on a contractual relationship to create a duty that, if breached, would form the basis of a constructive fraud claim." *Allison v. Union Hosp., Inc.*, 883 N.E.2d 113, 123 (Ind. Ct. App. 2008). Such a duty can arise in the context of a buyer–seller relationship, though, if a plaintiff shows three elements: (1) the seller makes unqualified statements to induce another to make a purchase; (2) the buyer relies on the statements; and (3) the seller has professed to the buyer that it has knowledge of the truth of the statements. *Douglas*, 808 N.E.2d at 702.

Forest River seeks to invoke this buyer–seller framework to establish that Lexmark owed it a duty to disclose the software patch. As to the first element, it argues that Lexmark made statements that no other users of its software were experiencing the same problems and that Forest River's system was to blame for the crashes. However, Forest River overlooks the latter half of this element, which is that the statements were made "to induce another to make a purchase." *Id*. As just discussed, Forest River alleges that the statements in question were made "after May 2015," [DE 25 p. 18], but the parties entered the contract in question in November 2014, six months earlier. Thus, by the time of the statements in question, the parties no longer had a buyer–seller relationship, but merely a contractual relationship, which cannot support a claim for constructive fraud. *Allison*, 883 N.E.2d at 123. Therefore, because Forest River has not alleged that Lexmark made any statements to induce it to make a purchase aside from the contract they had already entered, Lexmark had no duty to disclose this information, and Count IV fails for that additional reason.

## IV.  CONCLUSION

Lexmark's motion for judgment on the pleadings as to Counts III and IV [DE 18] is GRANTED. If Forest River wishes to attempt to cure these deficiencies, it must move for leave to amend its complaint by May 31, 2017.

SO ORDERED.

ENTERED:  May 9, 2017

/s/ JON E. DEGUILIO
Judge
United States District Court